IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE CHICKASAW NATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-00488-PRW |
| | ) |
| CAREMARK PHC, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

# ORDER

Before the Court are UnitedHealth/Optum Defendants' Motion to Stay Proceedings Pending Arbitration Pursuant to Section 3 of the Federal Arbitration Act (Dkt. 59); CVS/Aetna/Caremark Defendants' Motion to Stay Proceedings Pending Arbitration in the District of Arizona (Dkt. 61); and Plaintiff's Cross-Motion for an Order or Declaratory Relief that Plaintiff's Claims Are Not Subject to Arbitration (Dkt. 82). For the reasons explained below, the Court **GRANTS** the Defendants' respective motions (Dkts. 59, 61) and **DENIES AS MOOT** Plaintiff's cross-motion (Dkt. 82).

## *Background*

Plaintiff is a federally recognized and sovereign Native American tribe, the Chickasaw Nation (the "Nation"). The Nation operates its own healthcare system that serves Native persons throughout Chickasaw territory. Under federal law, members of federally recognized Native Nations are eligible to receive free healthcare services at the Nations' facilities, and the Nations may recoup their costs of providing those free services from members' health-insurance plans. Defendants are two of the largest pharmacy benefit

1

managers and several of their affiliates: the UnitedHealth/Optum Defendants and the CVS/Aetna/Caremark Defendants.

Since 2005, the Chickasaw Nation Department of Health has acted under provider agreements with Defendants' various pharmacy-benefit-manager entities. These provider agreements permit the Chickasaw ITU Pharmacy to submit claims for clients covered by the Defendant-managed benefit plans. In December 2020, the Nation sued Defendants in the United States District Court for the Eastern District of Oklahoma, claiming violations of 25 U.S.C. § 1621e, a provision of the Indian Health Care Improvement Act referred to here as the "Recovery Act," as well as claims for negligence per se and unjust enrichment. The Nation also seeks injunctive and declaratory relief.

The Nation alleges that, since approximately 2015, Defendants have violated the Recovery Act by improperly denying claims submitted by the Nation. Those claims sought reimbursement for covered medications that the Nation's pharmacies provided to tribal members enrolled in health-insurance plans managed by Defendants, and the Nation argues that the Recovery Act entitles it to recover from Defendants the cost of providing those covered medications. Defendants, however, have asked the Court to stay the case—they argue that arbitration clauses contained in the parties' respective Provider Manuals and Pharmacy Network Agreements ("PNAs") require the parties to resolve this dispute in binding arbitration.

A few months after the Nation filed its Complaint, Caremark filed a petition under the Federal Arbitration Act ("FAA") to compel arbitration of the Nation's Recovery Act claims. That petition, filed in the District of Arizona, was granted on July 2, 2021. The

2

district court found that—under the parties' arbitration provision—the arbitrator, not the court, should decide the threshold issue of arbitrability.[1] Specifically, the court held that the delegation clause in Caremark's Provider Manual was "clear and unmistakable" evidence of the parties' intent to submit the threshold issue of arbitrability to the arbitrator.[2] Therefore, the court held, the "arbitrator must decide whether the claims in this case are subject to arbitration, not [the district court]."[3] On August 9, 2022, the Ninth Circuit affirmed the district court's order compelling arbitration.

## *Legal Standard*

Arbitration agreements such as the ones at issue in this case are governed by the FAA. Section 2 of the FAA provides that

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.[4]

Section 3 of the FAA further provides that a stay is required if the case involves "any issue referable to arbitration under an agreement in writing":

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of

---

[1] *Caremark, LLC v. Chickasaw Nation*, No. CV-21-00574-PHX-SPL, 2021 WL 2780859, at *3 (D. Ariz. July 2, 2021).

[2] *Id.*

[3] *Id.*

[4] 9 U.S.C. § 2.

the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.[5]

Important here, the FAA applies to delegation clauses within arbitration agreements, which are clauses that delegate to the arbitrator threshold issues of arbitrability.[6] The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes."[7] But the Supreme Court has "added [the] important qualification" that there must be "clear and unmistakable" evidence that "the parties agreed to arbitrate arbitrability."[8]

## *Discussion*

The Court will discuss Defendants' motions separately, beginning with the CVS/Aetna/Caremark Defendants before turning to the UnitedHealth/Optum Defendants.

---

[5] 9 U.S.C. § 3. A motion to stay under § 3 of the FAA is distinct from a petition/motion to compel arbitration under § 4. *See BOSC, Inc. v. Bd. of Cty. Comm'rs of Cty. of Bernalillo*, 853 F.3d 1165, 1170 (10th Cir. 2017) ("Section 3 of the FAA obliges courts to stay litigation on matters the parties have agreed to arbitrate so long as the applicant for the stay is not in default in proceeding with arbitration, while § 4 authorizes a court that otherwise has subject matter jurisdiction to compel arbitration."); *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1380 (10th Cir. 2009) (describing § 3 as "empowering district courts to stay litigation where an issue therein is subject to arbitration under a written agreement" and § 4 as "authorizing district courts to compel arbitration under a valid agreement to arbitrate"). Defendants have brought their respective motions under § 3, so they are properly before this Court, rather than in the districts where the arbitration would occur.

[6] *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010).

[7] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527, 202 L.Ed.2d 480 (2019).

[8] *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (alterations and quotation marks omitted).

4

For the reasons explained below, the Court **GRANTS** Defendants' respective motions to stay.

 A. *CVS/Aetna/Caremark Defendants*

On appeal to the Ninth Circuit, the Nation advanced two reasons why its Recovery Act claims were not arbitrable. First, it contended that the arbitration provision in Caremark's Provider Manual did not bind the Nation "because it never clearly and unequivocally waived its tribal sovereign immunity."[9] Second, the Nation argued that "the Recovery Act itself precludes the enforcement of any agreement to arbitrate in this context."[10] Ultimately, however, the Ninth Circuit agreed with the district court that because of the delegation clause in the Provider Manual, the threshold question of arbitrability was one for the arbitrator, not the court.

This Court agrees with the Ninth Circuit's reasoning and follows it for the purpose of this motion to stay proceedings (Dkt. 61). Under the principles of comity and judicial economy, the Court can stay the proceedings in this case to promote the efficient use of judicial resources.[11] In light of the Ninth Circuit's decision in *Caremark, LLC v. Chickasaw Nation*, which affirmed the District of Arizona's order compelling arbitration between the Nation and the CVS/Aetna/Caremark Defendants, the Court concludes that a stay is proper with respect to these parties.

---

[9] *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1028 (9th Cir. 2022).

[10] *Id.*

[11] *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180 (1952).

### B. United Health/Optum Defendants

The Ninth Circuit's reasoning in *Caremark, LLC v. Chickasaw Nation* informs the Court's decision with respect to UnitedHealth/Optum's motion (Dkt. 59). As it asserted against Caremark, the Nation argues a stay is improper because (1) it did not clearly and unequivocally agree to arbitrate its claims with UnitedHealth/Optum and (2) the Recovery Act displaces any agreement to arbitrate the Nation's claims. The Court disagrees with both assertions.

The Nation contends that UnitedHealth's PNAs do not establish United Health's right to arbitrate the Nation's claims. But like the Provider Manual discussed in *Caremark, LLC v. Chickasaw Nation*, the PNAs at issue in the UnitedHealth/Optum Defendants' motion (Dkt. 59) contain a clear and unmistakable delegation clause. PNA § 10.1 provides that any dispute, "including, but not limited to *all questions of arbitrability*, the existence, validity, scope, interpretation, or termination of the Agreement or any term thereof" shall be submitted to arbitration.[12] And "just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon whether the parties agreed to submit that question to arbitration."[13] The Court "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."[14]

---

[12] *See* Pl.'s Resp. (Dkt. 81), at 22 (emphasis added).

[13] *First Options*, 514 U.S. at 938; *see also PowerAgent, Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1191 (9th Cir. 2004) ("Arbitrability is ordinarily for courts, not arbitrators, to decide *unless the parties agree otherwise*.") (emphasis added).

[14] *First Options*, 514 U.S. at 944.

The Court finds that the language in PNA § 10.1 is clear and unmistakable evidence that the signatories to the PNAs agreed to submit the question of arbitrability to the arbitrator. Therefore, as the district court concluded in granting Caremark's motion to compel arbitration, "[t]he arbitrator must decide whether the claims in this case are subject to arbitration, not this Court."[15]

The Court must address, however, whether it or the arbitrator(s) should decide the arbitrability of disputes between the Nation and *nonsignatories* of the PNAs. The Nation argues that none of the named UnitedHealth Defendants is a signatory to the PNAs; rather, the signatory to the PNAs is RxSolutions, Inc., the predecessor of OptumRX, Inc. The Nation further argues that even though the PNAs provide they "'shall inure to the benefit of the parties hereto and their respective successors and permitted assigns,' PNA § 11.10, UnitedHealth fails to show that Defendants Aetna, Inc.; Aetna Health, Inc.; Optum, Inc.; UnitedHealthcare Services, Inc.; or UnitedHealth Group, Inc. are 'successors' to RxSolutions, Inc. or 'permitted assigns.'"[16] UnitedHealth/Optum responds that the Nation "does not dispute that OptumRX—the specific defendant that allegedly 'is responsible for issuing unlawful denials' (Compl. ¶ 35)—*is* a signatory to the PNAs, as the successor to RxSolutions, which was the predecessor to OptumRx."[17] Indeed, the PNAs specifically

---

[15] *Caremark, LLC v. Chickasaw Nation*, No. CV-21-00574-PHX-SPL, 2021 WL 2780859, at *3 (D. Ariz. July 2, 2021), *aff'd sub nom. Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021 (9th Cir. 2022).

[16] Pl.'s Resp. (Dkt. 81), at 22.

[17] Def.'s Reply (Dkt. 90), at 5 (pointing to Exs. B, E, H, L. (Dkt. 75), which show that the subsequent exhibits and amendments to the PNAs were signed by OptumRx and explain that OptumRx is the successor to RxSolutions).

refer to OptumRX as RxSolution's successor.[18] But Defendants also note that UnitedHealth Group Inc., United Healthcare Services, Inc., and Optum, Inc., are nonsignatories of the PNAs.

PNA § 10.1 contains clear-cut language showing an intent to arbitrate threshold issues of arbitrability between the PNA *signatories*. The arbitration clause specifies that "the parties" shall submit disputes to the arbitrator(s), including questions of arbitrability, and includes no mention of nonsignatories. Because the arbitration clause refers only to "parties," i.e., the parties to the PNA, the Court finds that there is not clear and unmistakable evidence that the Nation agreed to arbitrate arbitrability with nonsignatories. Accordingly, this Court—rather than the arbitrator(s)—will decide whether the nonsignatories may enforce the arbitration clause of the PNAs.[19]

The Court finds that, under the relevant state law,[20] the nonsignatory Defendants may enforce the arbitration agreement. A litigant who is not a party to an arbitration

---

[18] *Id.* UnitedHealth/Optum correctly notes that successors may enforce contracts (including arbitration provisions) entered into by predecessors, particularly when, as here, the parties continue operating under the same agreements. *See, e.g.*, *Uptown Drug Co., Inc. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1183 (N.D. Cal. 2013); *Newport Petroleum, Inc. v. Tug JUSTINE FOSS*, No. C97-966C, 1997 WL 876955, at *1 (W.D. Wash. Sept. 2, 1997).

[19] *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013) ("Given the absence of clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories, the district court had the authority to decide whether the instant dispute is arbitrable.").

[20] PNA § 11.11 provides that "[t]he Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of California, without giving effect to the conflict of law principles thereof." *See* Dkt. 75, Ex. B. The parties have not disputed that California law governs the relevant PNAs.

agreement "may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement."[21] Under the doctrine of equitable estoppel, a nonsignatory corporate parent or affiliate may enforce an arbitration provision in two circumstances:

(1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract, and

(2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement."[22]

The Nation's Complaint alleges that "UnitedHealthcare Group's various insurance benefits plans unlawfully denied the Nation's claims . . . by means of its captive [pharmacy benefit manager], Defendant Optum RX," and that United Healthcare Services and Optum, Inc., provide services "through [their] subsidiaries."[23] Furthermore, the Nation's Complaint relies upon the existence of the parties' respective PNAs.[24] Therefore, the Court finds that

---

[21] *Kramer*, 705 F.3d at 1128 (citing *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 632 (2009)).

[22] *Id.* at 1128–29 (internal citations omitted).

[23] Pl.'s Compl. (Dkt. 1), ¶¶ 37–40.

[24] Although the Nation brings suit under a federal statute—25 U.S.C. § 1621e—the Complaint alleges that "[s]ince 2005, the Chickasaw Nation Department of Health has acted under a Provider Agreement with Defendants' various PBM entities. These provider agreement[s] permit[] the Chickasaw ITU Pharmacy to submit claims for clients *covered by Defendant-managed benefit plans*. . . .") (emphasis added). *See* Pl.'s Compl. (Dkt. 1), at 18.

the claims against OptumRX's corporate affiliates are "allegations of interdependent misconduct founded in or intimately connected with the obligations of the underlying agreement" with OptumRX. The Court thus concludes that the nonsignatory Defendants may enforce the arbitration clause contained in the PNAs.[25]

The Nation also argues that it "did not clearly and unequivocally agree to arbitration of the statutory claims raised in this case. Specifically, the Nation never waived sovereign immunity."[26] But as the Ninth Circuit recognized in *Caremark, LLC v. Chickasaw Nation*, relying on Tenth Circuit caselaw, "[t]he Nation's proposed approach here would put the cart before the horse, requiring us to resolve whether there has been a waiver of tribal immunity for particular claims for which arbitration is sought before determining whether an arbitration agreement exists at all."[27] The parties' arbitration agreement may or may not have implications for the Nation's sovereign immunity, but the Court need not resolve those implications before deciding whether there is a valid arbitration agreement and delegation clause. Therefore, like the Ninth Circuit, "we reject the Nation's argument that, because it did not clearly and unequivocally waive its tribal immunity, it cannot have

---

[25] The Nation also contends that the arbitration provision in the PNAs does not clearly and unequivocally extend to the Nation's claims arising under the Recovery Act. The PNAs, the Nation argues, focus instead on *contractual* disputes. However, since the parties' arbitration agreement contains an enforceable delegation clause, and because the Court concludes that both the signatory and nonsignatory Defendants may enforce the arbitration agreement contained in the PNAs, this is a question for the arbitrator(s), not this Court.

[26] Pl.'s Resp. (Dkt. 81), at 9.

[27] *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1032–33 (9th Cir. 2022).

agreed to the arbitration provisions (or the delegation clauses)."[28] Likewise, with respect to the Nation's argument that the Recovery Act displaces the arbitration provisions, the Court agrees with the Ninth Circuit's conclusion that, because of the delegation clause, this is a question for the arbitrator(s).[29]

## *Conclusion*

As the Ninth Circuit concluded in *Caremark, LLC v. Chickasaw Nation*, "[w]e express no opinion on the enforceability of the underlying arbitration provision, which—in light of the delegation clause—is an issue that the arbitrator must decide in the first instance."[30] Neither does the Court express an opinion on "whether the Nation has waived its sovereign immunity with respect to any counterclaims that [the parties] might assert against the Nation in arbitration, or whether the Recovery Act precludes arbitration of the merits of the Nation's claims."[31] Because the parties' arbitration provisions contain clear and unmistakable delegation clauses, and in the interests of comity and judicial economy, the Court hereby **GRANTS** Defendants' respective motions (Dkts. 59, 61) and **DENIES AS MOOT** Plaintiff's cross-motion (Dkt. 82).

Accordingly, the action is **STAYED** and will be administratively closed pending the outcome of any arbitration proceedings. The parties shall jointly notify the Court of the completion of their respective arbitration proceedings within fourteen (14) days thereof. If

---

[28] *Id.* at 1033.

[29] *See id.* at 1034.

[30] *Id.* at 1034.

[31] *Id.*

a party seeks to reopen this action for any appropriate purpose, a motion to reopen must be filed no later than seven (7) days after filing the abovementioned notice with the Court.

**IT IS SO ORDERED** this 30th day of September 2022.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE